# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA RICHARDSON,   Plaintiff, | ) ) ) | |
| v. | ) ) | 05 C 4599 |
| DSW, INC.,   Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

Bette Midler famously said, "Give a girl the correct footwear and she can conquer the world." Innumerable women believe this is true, or at the very least, simply enjoy hunting down the elusive perfect pair of shoes. Many of these women shop at defendant Designer Shoe Warehouse ("DSW"), which was victimized by the theft of credit information of shoppers who paid for shoes using a credit card or check between November of 2004 and February of 2005.

In this diversity case, which is styled as a class action and was removed from state court, plaintiff Barbara Richardson contends that DSW negligently permitted unauthorized access to its computer system and raises claims based on implied contract and bailment theories and the Illinois Consumer Fraud Act. DSW's Rule 12(b)(6) motion to dismiss is before the court. For the following reasons, Richardson's implied contract claim survives DSW's motion to dismiss, but her bailment and Illinois Consumer Fraud Act claims are dismissed.

## Background

The following facts are drawn from Richardson's complaint. Richardson used a Visa credit card and a debit card to purchase shoes from DSW on several occasions. She alleges that when she bought shoes using her debit and credit cards, she provided "personal information to DSW for the sole purpose of facilitating transactions with DSW and with the understanding that

DSW would take appropriate measures to prevent use of such information for other purposes." Complaint at ¶ 9. In March of 2005, DSW issued a press release stating that credit card and purchase information had been stolen from its computer system and that DSW had notified law enforcement agencies as well as the affected credit card companies and issuing banks. The press release also encouraged DSW customers to monitor their credit cards and advised them that DSW had set up a special help line to assist them as necessary.

In April of 2005, DSW issued another press release that identified the stores and dates of the transactions affected by the theft and provided additional information regarding the type of information that had been stolen. In June of 2005, Richardson received a letter from DSW advising her that she was one of the customers whose data had been stolen. Richardson closed her Visa account and is monitoring her credit report. Her three-count complaint raises claims based on implied contract and bailment theories as well as the Illinois Consumer Fraud Act.

DSW removed this case based on diversity jurisdiction and the parties conducted limited discovery regarding the amount in controversy. The parties then agreed that it would cost well over $75,000 to give Richardson the relief that she requests in her complaint. *See America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) (the amount in controversy is determined by the value to the plaintiff of the object of the litigation); *see also The Barbers Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir.1997) (actual damages incurred by the members of a putative class cannot be aggregated as at least one plaintiff must satisfy the jurisdictional amount). This belief is supported by the record. Jurisdiction being thus secure as the parties are also completely diverse, the court turns its attention to DSW's motion to dismiss.

**Standard on 12(b)(6) Motion to Dismiss**

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

**Implied Contract**

Under Illinois law, "an implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Overseas Development Disc Corp. v. Sangamo Construction Co.*, 840 F.2d 1319, 1330 (7th Cir. 1988). To establish a breach of contract claim in Illinois, a plaintiff must show: "(1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damage resulting from the breach." *See, e.g., Barille v. Sears Roebuck and Co.*, 682 N.E.2d 118, 121 (1st Dist. 1997).

The court begins with the premise that DSW's acceptance of non-cash payments led to the creation of a contractual relationship between DSW and its customers. As then Chief Justice

Burger noted in a dissent that was premised on a legal argument unconnected to his summary of how credit cards work, "bank credit card systems . . . rely upon a three-way transaction between the card issuer, the cardholder, and a subscribing retailer. This tripartite credit card arrangement basically entails three separate contractual agreements: (1) between the bank issuing the credit card and the individual cardholder; (2) between one of the banks in the system and a local merchant; and (3) between the merchant and the cardholder." *U. S. v. Maze*, 414 U.S. 395, 413 n.2 (1974) (Burger, CJ, dissenting). The court thus disagrees with DSW's claim that its acceptance of non-cash methods of payment does not lead to the creation of some sort of contractual relationship between DSW and its customers. The contours of this relationship are unclear at this point in the proceedings, but the basic fact remains that DSW and its non-cash paying customers have a contractual relationship.

This is true despite DSW's numerous arguments to the contrary. First, DSW contends that Richardson had a subjective understanding that DSW would take appropriate measures to keep her credit card information secure, and that DSW did not share this one-sided understanding so there was no meeting of the minds as to definite contractual terms. In other words, DSW is contending that it never agreed to secure customer information in any way, shape, or form, and that customers knew and agreed to this position when they purchased shoes using credit cards or personal checks. This is not an appropriate argument to raise at the motion to dismiss stage as the court cannot make any findings of fact as to what the parties did or did not believe at this point in the proceedings.

Second, DSW asserts that Richardson's complaint is deficient because she does not allege that she gave DSW any additional consideration in exchange for DSW's alleged separate

agreement (above and beyond its agreement to sell her shoes) in order to induce DSW to secure her credit and debit card information. However, Richardson's complaint alleges that she and DSW had an implied agreement that DSW would make reasonable efforts to secure her credit information if she opted to pay for shoes with a debit or credit card. *See A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952, 956-57 (7th Cir. 2002) ("Suppose a person walks into a store and takes a newspaper that is for sale there, intending to pay for it. The circumstances would create a contract implied in fact. Were there no basis for inferring an intention to pay, there would be no contract . . . "). At the motion to dismiss stage, the court must assume that the facts in Richardson's complaint are true. And if they are, Richardson did not need to provide additional consideration to induce DSW to provide something that it already had agreed to provide.

Third, DSW argues that Richardson's complaint does not allege that DSW breached the purported implied agreement for DSW to keep her credit information safe from hackers. According to DSW, the complaint, instead, only alleges that DSW agreed to use her credit information to facilitate a credit transaction and DSW did this by allowing her to purchase shoes with her debit and credit cards. DSW asserts that it was itself the victim of hackers, but nevertheless did what it promised to do (allow her to buy shoes using her debit and credit cards) and thus did not breach any contract that may have existed.

This argument is based on a twisted reading of Richardson's argument. When the court construes the complaint broadly, as it must at the motion to dismiss stage, Richardson is contending that she agreed to give DSW her credit and debit card information to facilitate the purchase of shoes with the understanding that DSW would take reasonable measures to secure

that information. Perhaps discovery will reveal facts that show that this understanding was unfounded and not shared by DSW: for example, it is possible (although markedly unlikely) that DSW posts signs in its stores stating that it takes no measures to secure its computer systems so credit or check purchases are made at customers' own risk. But once again, the court cannot make this sort of determination in connection with a Rule 12(b)(6) motion.

Fourth, DSW claims that an implied contract cannot exist if an express contract exists. In support, it contends that an express contract was formed each time Richardson bought shoes from DSW, based on DSW's offer to sell the shoes at the listed price, Richardson's acceptance of this offer (shown by her selection of shoes) and her payment of consideration (the listed price of the shoes). It then concludes that in light of this express contract, there could be no implied contract containing additional terms. This argument is unconvincing as the court can easily hypothesize facts that are consistent with the allegations in the complaint that support a finding that an implied contact containing additional terms existed.

Specifically, it is likely that DSW accepts certain forms of payment (*e.g.*, Visa, Mastercard, or personal check) and that it opts not to accept other forms of payment (*e.g.*, Diners Club or foreign currencies). If this is correct (and again, the court cannot make any definitive findings at the motion to dismiss stage), it would be possible to find that DSW not only offered to accept certain forms of non-cash payment in exchange for shoes but also offered to take reasonable measures to keep this information secure. If this turns out to be true, no additional consideration would be necessary. For all of these reasons, DSW has failed to establish that dismissal of Richardson's implied contract claim is warranted.

**Bailment**

Under Illinois law, a bailment "is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it. In order to prevail on a bailment claim, [a plaintiff] must show (1) an express or implied agreement to create a bailment, (2) delivery of the property in good condition, (3) acceptance of the property by the bailee, and (4) the bailee's failure to return the property, or the return of the property in damaged condition." *Indemnity Ins. Co. of North America v. Hanjin Shipping Co.*, 348 F.3d 628, 637 (7th Cir. 2003) (internal citations omitted).

In certain circumstances, intangible property may be the subject of a bailment. For example, in *Liddle v. Salem School Dist. No. 600*, 249 Ill.App.3d 768, 770 (5th Dist. 1993), the Illinois Appellate Court held that information in a scholarship letter from a college that was addressed to the plaintiff student in care of his school was "property" that could be subject to bailment for purposes of the student's action against his school district based on the school's failure to deliver the letter. Relying on *Liddle*, Richardson claims that her credit/debit information is intangible property that is subject to a bailment.

Critically, however, as DSW correctly points out, Richardson has not alleged that the parties agreed that DSW would return her credit and debit card information to her. Arguably, the credit/debit information was damaged, but a conclusion that the parties had a meeting of the minds and agreed that DSW would keep Richardson's information for a specific amount of time and then give it back to her is inconsistent with the allegations in the complaint. Because

Richardson cannot state a claim for which relief may be granted without such an allegation, Richardson's bailment claim is dismissed with prejudice.

### The Illinois Consumer Fraud Act

To state a violation of the Illinois Consumer Fraud Act ("CFA"), 815 ILCS § 505/2, a plaintiff must allege: "(1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that plaintiff rely on the deception; and (3) the occurrence of the deception in the course of conduct involving trade or commerce." *Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 942 (7th Cir. 2005). Importantly, however, a defendant's unfair or deceptive practice must be intentional and inure to the defendant's benefit in order to form the basis of a CFA claim. *See id.*

Thus, in *Parks v. Wells Fargo Home Mortgage*, Norwest Mortgage failed to pay two tax escrow installments on property that was mortgaged by the plaintiffs, who then became enmeshed in a legal fight to avoid losing their home. The plaintiffs eventually succeeded in defeating the claim of a tax scavenger who had fraudulently obtained a tax deed on their home and filed a federal diversity suit against Norwest for breach of contract, breach of fiduciary duty, and violation of duties imposed by the ICFA.

The district court found that Norwest's errors were unintentional but that its failure to inform the plaintiffs about the true state of their taxes was a material omission, and that Norwest intended for the plaintiffs to rely on its statement as to the status of their escrow account. It thus concluded that Norwest's overall conduct "rose to the level of misconduct that is actionable under the CFA."

The Seventh Circuit reversed, explaining that:

> [I]t is unclear what sort of 'reliance' Norwest intended. Surely Norwest intended that the [plaintiffs] rely on the statement as a true statement of their escrow account, but Norwest did not intend for the [plaintiffs] to fail to pay their taxes. In this case, the [plaintiffs'] reliance on the misstatements meant both that they could lose their home and Norwest could lose its security. Although in some circumstances innocent misrepresentations may form the basis of a CFA claim, we can find no Illinois case that extends the law to a situation like this one, in which a failure to disclose information inflicted as much injury on the defendant as on anyone else. There was no benefit that could flow to Norwest as a result of its failure to detect the tax payment mix-up, and so we find that the available evidence fails to support a claim under the CFA.

*Id*.

Here, Richardson has not alleged that DSW intentionally caused the security breach that led to the misappropriation of her credit and debit card information. Indeed, the complaint asserts that an unknown person or persons stole consumer credit information from its computer system. Thus, Richardson cannot plead that DSW intentionally engaged in an unfair or deceptive act or practice. Moreover, as in *Parks v. Wells Fargo Home Mortgage*, where the defendant's unintentional error in the processing of taxes led to rampant problems for one of the defendant's customers, the court is willing to find as a matter of law that there is no conceivable benefit that could flow to DSW as a result of the fact that an unauthorized person hacked into its computers and stole purchasers' credit information. Accordingly, Richardson's CFA claim is dismissed with prejudice.

## **Conclusion**

DSW's motion to dismiss [8-1] is granted in part and denied in part. Specifically, Richardson's implied contract claim survives DSW's motion to dismiss, but her bailment and

Illinois Consumer Fraud Act claims are dismissed. These claims are dismissed with prejudice as the defects in these counts cannot be cured given the complaint's factual allegations.

DATE:   November 3, 2005      _____
 Blanche M. Manning
 United States District Judge